**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Michael B. Dvoren, Esq. (AZ Bar # 027386)
Email: Michael@rmwarnerlaw.com
Raeesabbas Mohamed, Esq. (AZ Bar #027418)
Email: Raees@rmwarnerlaw.com
Tel: 480-331-9397
Fax: 1-866-961-4984

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Bad Dragon Enterprises, Inc., a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SinSaint, Inc., a New York Corporation<br><br>Defendant. | No. CV-24-00609-PHX-SRB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR TO TRANSFER** |

Plaintiff Bad Dragon Enterprises, Inc. ("**Plaintiff**") responds in opposition to Defendant SinSaint, Inc.'s ("**Defendant**") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or to Transfer (Doc. 20) ("**Motion**"), as follows:

## I.   INTRODUCTION.

In the Motion, Defendant falsely tells the Court it "has no jurisdictional contacts with this forum"; it "has not conducted business in Arizona"; it "does not have any connection to this District"; and that "none of [its] products, including those that are not at issue in this lawsuit, were sold, shipped, or distributed in or to Arizona." Motion at 1-2, 4. In reality, Defendant has directly and provably sold its products into this District, has done business with this District, and has jurisdictional contacts in this District. Based on these facts alone, Plaintiff has ample reason to believe Defendant has other jurisdictional contacts

with this District that it has also omitted or withheld. As such, Plaintiff seeks jurisdictional discovery to uncover those other contacts before the Court rules on the Motion. If the Court ultimately determined that it did not have personal jurisdiction over Defendant once jurisdictional discovery concludes, only then would Plaintiff request the transfer of this action to the Eastern District of New York instead of dismissal, just as Defendant alternatively requests. *See id.* at 3.

## II.   FACTUAL BACKGROUND.
### A.   Parties and Procedural Background.

Plaintiff is an industry-leading developer, manufacturer, and seller of adult entertainment products, including its extensive line of fantasy-themed sex toys. Plaintiff has obtained numerous copyright registrations for the unique, original sculptural design elements embodied in many of its sex toy products, including the 13 copyrighted works at issue in this action. *See* **Exhibit 1**, Declaration of Michael Sullivan ("**Sullivan Decl.**") ¶¶ 5-6. Plaintiff, through counsel, sent Defendant a demand letter on January 31, 2024, which advised Defendant of Plaintiff's ownership of those copyrighted works (and identified Plaintiff as a Phoenix, Arizona based company), and asserted that Defendant was infringing those works by selling certain identified Defendant products. *See* Doc. 1 ¶¶ 14-16, 19. Defendant continued selling those accused products despite receiving the demand letter. *Id.* ¶ 21. Following this, Plaintiff filed its Complaint on March 20, 2024, therein alleging 13 counts of copyright infringement with respect to 13 of those accused products. *See id.* ¶¶ 14-16. Discovery has not yet begun.

Although Plaintiff is a Nevada corporation that was incorporated in 2008, its principal place of business since 2009 has been Phoenix, Arizona. *See* Sullivan Decl. ¶¶ 3-4. Defendant is a New York corporation that was incorporated in May of 2023. Motion at 3. Defendant asserts it is a "very small start-up company that also sells sex toys." *Id.* Defendant also makes numerous factual assertions throughout the Motion as to why it

supposedly has no connections of any kind with this District. At least some of these assertions are provably false.

///

### B.   Defendant's Forum Related Activities.

In the Motion, Defendant falsely claims that "none of [its] products, *including those that are not at issue in this lawsuit*, were sold, shipped, or distributed in or to Arizona," and "Plaintiff cannot demonstrate that Defendant *sold any products* … to any Arizona consumers." Motion at 4, 8 (emphasis added). Although Plaintiff was unable to make test purchases of any of the 13 accused products before Defendant removed them from its e-commerce website, https://sinsaint.com/ (the "**Website**") in March of 2024, Plaintiff had a non-party Arizona purchaser successfully purchase two products from the Website, which were shipped to the purchaser's home in Phoenix, Arizona. On July 24, 2024, Plaintiff's CFO, Michael Sullivan, asked his friend, Michael Everest, to test purchase a few random products from the Website, to learn (among other things) whether or not Defendant sells and ships its products into Arizona. *See* **Exhibit 2**, Declaration of Michael Everest ("**Everest Decl.**") ¶ 5. On July 25, 2024, Mr. Everest did just that, spending a total of $108.05 to purchase two of Defendant's products. *Id.* ¶¶ 6-8, 10. Mr. Everest, an Arizona resident, ordered the products to be shipped to his home address in Phoenix, and he successfully received those purchased products directly from Defendant, at that address on July 29, 2024. *Id.* ¶¶ 3, 8, 16-17, 19-20. Mr. Everest's purchase alone shows that Defendant transacts business with Arizona customers, sells its products to Arizona customers, ships its products to Arizona customers, and directly distributes its products into Arizona.

As Mr. Everest's declaration also evidences (and as any Website visitor can verify for themselves), the Website is an interactive e-commerce site that allows visitors to shop for Defendant's products, select any of those products and add them to a digital shopping cart, go through a "checkout" process, complete the purchase, and have the purchased items

shipped to them. *Id.* ¶¶ 6-8, 16-17. Once items are placed in the shopping cart, the Website visitor can "Enter your destination to get a shipping estimate." *Id.*, Exhibit A. Just under that header, the visitor can select "Arizona" within the "Region/State" dropdown menu, just as Mr. Everest did. *Id*. This same option is available under the "Billing Address" and "Delivery Address" sections as well. *Id*.

Next, a review of the public WHOIS record for the sinsaint.com domain name shows that Defendant chose Arizona based GoDaddy.com, LLC as Defendant's domain registrar. *See* Sullivan Decl. ¶¶ 24-26, Exhibit A. This is highly relevant given that the Website, which uses and relies on the sinsaint.com domain name, is the site from which the 13 accused products (along with all of Defendant's other products) were advertised, displayed, offered, sold, and distributed. Pursuant to GoDaddy's Universal Terms of Service Agreement, Defendant agreed to resolve certain disputes with GoDaddy exclusively in "the Superior Court of Maricopa County, Arizona, or the United States District Court for the District of Arizona." *Id*. ¶¶ 28-30, Exhibit B (Section 23(N) specifically).

The WHOIS record for the sinsaint.com domain name also reveals that Defendant additionally chose to use the services of Arizona based (and GoDaddy owned) Domains By Proxy, LLC, to hide Defendant's "Registrant Name" and contact information in the WHOIS record. *Id.* ¶¶ 25, 27, Exhibit A. As such, Defendants agreed to abide by GoDaddy's "Domain Name Proxy Agreement," through which Defendant agreed that "any action relating to or arising out of this Agreement, shall be brought exclusively in the courts of Maricopa County, Arizona." *Id*. ¶¶ 31-33, Exhibit C (Section 10(b) specifically). Defendant further agreed that with respect to domain name registration disputes, including those with third parties, it would "submit to the exclusive jurisdiction and venue of the U.S. District Court for the District of Arizona located in Phoenix, Arizona." *Id*. ¶ 34, Exhibit C (Section 10(b) specifically).

Next, Plaintiff has well founded reasons to dispute Defendant's claim that its revenue "from the date of incorporation to the present, has been less than $5,000," and dispute that Exhibit A to Oleg Semenenko's declaration is an accurate and complete record of all of Defendant's sales "for the relevant timeframe," *i.e.*, presumably May of 2023 to April of 2024. Doc. 20-1 ¶¶ 4, 19-20, 28, Exhibit A.

Plaintiff's CFO, Michael Sullivan, has nine years of professional experience in the adult products industry, with extensive experience in advertising, sales, product development, finances, and business operations, including experience examining the sales volumes and business operations of a number of Plaintiff's competitors. *See* Sullivan Decl. ¶¶ 10,16. He reviewed Mr. Semenenko's declaration and exhibit, the Website, Defendant's social media presence and posts, its use of online influencers to promote its products, online reviews of its products, the length of time Defendant has been in business, and its conspicuous attendance at the January, 2024 AVN awards and convention in Las Vegas. *Id*. ¶¶ 11-13. Given that the AVN awards is the U.S. adult industry's premier sales convention and award show, Mr. Sullivan asserts that the publicity and exposure Defendant received from this event alone would have led to significantly more sales than the "less than ten orders" total Mr. Semenenko claims in paragraph 27 of his declaration. *Id*. ¶ 13. Additionally, Defendant's "Octopus" product was nominated for "Best Sex Toy" at the 2024 "AltStar Awards aka AltPorn Awards" in Las Vegas. *Id*. ¶ 14. With hundreds of competing companies in the fantasy sex toy niche alone, Mr. Sullivan finds this nomination to be an incredible feat for a company like Defendant, considering its supposedly low sales and few completed orders.

Mr. Sullivan's doubts are also based on Defendant's inconsistent and contradictory assertions regarding these supposedly low sales and numbers of order. *Id*. ¶ 17. On or around April 29, 2024, Defendant's counsel sent a letter to Plaintiff's counsel, therein asserting that "[t]here are records of only seven completed orders in the company's entire

history, excluding test orders by the owner. Of those seven orders, just one involved an accused product (Lao), and that order was canceled and refunded." *Id*. ¶ 18. This representation regarding the Lao product is also made in paragraph 27 of Mr. Semenenko's declaration, where he states that Defendant "had less than ten orders of any products … during the time it offered the Accused Products for sale. Of those orders, just one involved an Accused Product (Lao), and that order was canceled and refunded." *Id*. However, on June 21, 2024, Defendant's counsel sent Plaintiff's counsel an email which included the admission that "on further investigation," Defendant had also identified "cash sales to individuals at the AVN show," including "one Astaroth and one Loa at approximately $100 each." *Id*. ¶ 20. The Astaroth and the Loa products are two of the 13 accused products at issue in this lawsuit. *See* Doc. 1, Complaint ¶ 15(b), (h).  That same email also attached screenshots showing that Defendant made additional revenue through https://www.etsy.com/, which Mr. Semenenko also omitted from his declaration and exhibits. *Id*. ¶ 21.  Based on the above, Mr. Sullivan believes it is very likely that Defendant has made additional product sales that were also omitted from Mr. Semenenko's declaration, including sales of accused product to Arizona customers. *Id*. ¶ 23.

**III.     ARGUMENT.**

    **A.     <u>Legal Standard Generally</u>.**

Federal courts generally follow state law in determining the bounds of personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1)(A). "Arizona 'exerts personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995)); *see also* Ariz. R. Civ. P. 4.2(a). Given that, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  Under the Fourteenth Amendment's due process clause, a court's "authority depends on the defendant having such 'contacts' with the forum State that 'the maintenance of the suit' is

'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). This inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum state.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). That relationship may permit "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.*

General jurisdiction depends on the defendant's relationship with the forum state—for companies, the question is whether the defendant is incorporated, headquartered, or otherwise "at home" there. *Ford*, 141 S. Ct. at 1024. "Specific jurisdiction covers defendants that are less intimately connected with a state, but that have sufficient minimum contacts with the state that are relevant to the lawsuit." *LNS Enters.*, 22 F.4th at 859 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)). While general jurisdiction depends on the relationship between the defendant and the forum, specific jurisdiction depends on the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted).

Plaintiff agrees with Defendant that courts in the Ninth Circuit apply the following three-pronged test to determine whether a court has specific personal jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

Motion at 6-7 (citing *Herbal Brands v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) *cert. denied*, 144 S. Ct. 693 (2024)). Plaintiff also agrees that it has the burden of proving the first two prongs of the above test. However, Plaintiff "need only make a prima facie showing of jurisdictional facts" when the Court's determination is based on written materials rather than an evidentiary hearing. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (quotation marks and citation omitted). "The plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Uncontroverted allegations in the complaint must be taken as true. *Boschetto*, 539 F.3d at 1015. Additionally, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Any conflict "between the parties over statements contained in affidavits ***must be resolved in the plaintiff's favor***." *Boschetto*, 539 F.3d at 1015 (quoting *Schwarzenegger*, 374 F.3d at 800) (emphasis added).

### B.     The *Herbal Brands* Case

The first prong of the specific jurisdiction test encompasses the concepts of "purposeful availment" and "purposeful direction." *Herbal Brands*, 72 F.4th at 1090. For torts such as copyright infringement, the Ninth Circuit employs "the purposeful direction test." *Id*. at 1091; *Lang Van, Inc. v. VNG Corporation*, 40 F.4th 1034, 1041 (9th Cir. 2022) ("In actions for claims such as copyright infringement, there must be 'purposeful direction' under the "[Calder] effects test.""). Purposeful direction is in turn determined under "the 'effects' test derived from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)," which "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Herbal Brands*, 72 F.4th at 1091. This "Calder effects test asks 'whether the defendant: (1) committed an intentional act, (2)

expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (internal citations and quotations omitted).

In *Herbal Brands*, the Ninth Circuit found that the exercise of specific personal jurisdiction was sufficiently supported based on the plaintiff's allegations that the New York based defendants "(1) operated a universally accessible interactive website; (2) made an unknown number of sales to Arizona residents; and (3) received cease-and-desist letters from Plaintiff, an Arizona resident, after which Defendants made no effort to stop selling to Arizona residents." *Id.* at 1088-89 (holding that "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant has purposefully directed its conduct at the forum such that the exercise of personal jurisdiction may be appropriate.").

The Ninth Circuit found that the plaintiff "easily satisfies the first and third elements of the Calder effects test" based on "Defendants' sale of products to Arizona residents … and the cease-and-desist letters inform[ing] Defendants that their actions were causing harm in Arizona." *Id.* at 1091. The second element was satisfied based on the defendants' "interactive" website, in conjunction with the defendants selling physical product into the forum state. *Id.* at 1091-94.

The Ninth Circuit also instructed that two additional elements must be present, *i.e.*, "the sales must occur as part of the defendant's regular course of business," and "the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce." *Id.* at 1094. For this second element, "the defendant's offering of products for sale through its website and third-party websites was evidence that the defendant's contacts with the forum were not "random, isolated, or fortuitous," *Id.* (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981-82 (9th Cir. 2021)). Moreover, "the express aiming inquiry does not require a showing that the defendant targeted its advertising or operations at the forum." *Id*.

  C.  <u>**The Court Has Specific Personal Jurisdiction Over Defendant**</u>.

   Just like the plaintiff in *Herbal Brands*, Plaintiff here meets all elements of the Calder effects test, and Defendant's "purposeful direction" is therefore shown. Similar to the plaintiff in *Herbal Brands*, Plaintiff sent Defendant a January 31, 2024 demand letter, therein advising of Plaintiff's ownership of the copyrighted works at issue, identifying itself as a Phoenix, Arizona based company, and asserting that Defendant was infringing those works by selling certain identified products. Despite receiving that demand letter, Defendant continued selling those identified products thereafter. *See* Doc. 1 ¶¶ 14-16, 19, 21. Also like in *Herbal Brands*, Defendant employs a universally accessible interactive website through which it sells and ships products to Arizona residents. *See* Everest Decl. Because Defendant does this directly through its own website, thereby exercising "some level of control over the ultimate distribution," Defendant's contacts with Arizona are not "random, isolated, or fortuitous." *Herbal Brands*, 72 F.4th at 1094; *Ayla*, 11 F.4th at 981–82. Also, for the "intentional act" element, Defendant additionally purchased and uses domain privacy services from Arizona based Domains by Proxy, LLC. *See* Sullivan Decl. ¶¶ 25, 27, Exhibit A; *Will Co., Ltd. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) ("purchasing domain privacy services" is an intentional act for purposes of personal jurisdiction).

   In its anticipated reply, Defendant will likely argue that *Herbal Brands* is distinguishable because the products the defendants sold through Amazon.com in that case were allegedly infringing products. While it is true that here, Plaintiff was unable to purchase any of the 13 accused products before Defendant removed them from the Website, Mr. Everest's declaration shows that Defendant nevertheless operates an interactive website that it controls, through which Arizona residents can purchase products directly from Defendant, which Defendant will then ship to Arizona. *See* Everest Decl. *Herbal Brands*, 72 F.4th at 1094–95 ("Defendants exercised control over distribution" by creating and maintaining "a distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents

of all fifty states and delivers products to all fifty states."). Plaintiff has justifiable reasons to believe that Defendant has not revealed all of its product sales to the Court, and seeks jurisdictional discovery to ferret this out. *See infra;* Sullivan Decl. ¶¶ 11-23.

Defendant will also likely argue that Defendant selling two of its products to Mr. Everest in Arizona in insufficient to meet the "regular course of business" requirement. First, the fact that Defendant's interactive website specifically allows Arizona residents shopping there to select "Arizona" within the "Region/State" dropdown menu and have products shipped to them at any time, shows that selling and shipping product to Arizona residents is part of Defendant's regular course of business. *Herbal Brands*, 72 F.4th at 1094–95. Second, just like the plaintiff in *Herbal Brands*, the fact that Plaintiff does not yet know how many total sales Defendant has actually made to Arizona residents is not determinative. *See id*. at 1088-89 (holding that the exercise of specific personal jurisdiction was sufficiently supported based on, *inter alia*, the defendants making "an unknown number of sales to Arizona residents"). *See also Oceanside Health Products, LLC v. Dvir Deri, LLC*, 2024 WL 2269270, at *2 (9th Cir. May 20, 2024) ("the relevant inquiry for express aiming is whether selling these products using Amazon.com occurred as part of Defendants' regular course of business—that is, the total volume of online sales, both in and out of the forum."). Moreover, "[t]he outcome of the express-aiming inquiry ***does not depend on the number of sales*** made to customers in the forum." *Id*. at 1095 (emphasis added). For at least the reasons set forth above, Plaintiff satisfies the first prong of the specific jurisdiction test.

The second prong of the specific jurisdiction test requires that Plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Id.* at 1096 (internal citations omitted). In *Herbal Brands*, the Ninth Circuit concluded that this prong was met simply by plaintiff's claims alleging "harm caused by Defendants' sales of products," which related to "Defendant's conduct of selling those same products to Arizona

residents." *Id*. Here, Plaintiff alleges harm caused by Defendant's sales of its products, and has shown that Defendant sells and ships its products to Arizona residents. *See* Doc. 1 ¶¶ 14-16; Everest Decl. ¶¶ 3, 6-8, 10, 16-17, 19-20. Although Plaintiff cannot yet prove Defendant has sold accused products specifically to Arizona residents, it justifiably seeks jurisdictional discovery to determine this. *See infra;* Sullivan Decl. ¶¶ 11-23. However, an Arizona relationship is already shown in that Defendant advertised, displayed, offered, sold, and distributed all 13 of the accused products through the Website, which uses and relies on the sinsaint.com domain name. Defendant chose Arizona based GoDaddy as the domain name's registrar, and agreed that for domain name registration disputes (including those with third parties), Defendant would submit to this Court's exclusive jurisdiction and venue. *See* Sullivan Decl. ¶¶ 24-26, 34, Exhibit A, C (Section 10(b) specifically). Given that Defendant could at any time be haled into this Court and be subject to this Court's jurisdiction over a dispute involving the sinsaint.com domain name, Defendant being haled into this Court for a dispute involving products sold through the Website should satisfy the second prong.

The third prong of the specific jurisdiction test requires that the exercise of jurisdiction "be reasonable." *Herbal Brands*, 72 F.4th at 1090. Once Plaintiff has satisfied the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 1096. As this prong is Defendant's burden, Plaintiff will leave it to the Court to determine whether Defendant can meet it. *See* Motion at 11-12.

Finally, although any conflicts between statements contained in affidavits must be resolved in Plaintiff's favor, Plaintiff acknowledges the possibility that the Court may not find the above-described evidence sufficient. Plaintiff therefore requests jurisdictional discovery for the narrow and legitimate purpose of further developing the factual basis of the Court's personal jurisdiction.

### D. Plaintiff's Request for Jurisdictional Discovery.

The Court "may permit discovery to aid in determining whether it has [personal] jurisdiction." *Data Disc, Inc. v. Systems Technology Associates, Inc*., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). The Court should allow a plaintiff to conduct such discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.; Haines v. Get Air LLC*, No. CV-15-00002-TUC-RM (EJM), 2016 WL 3345519, at *2 (D. Ariz., 2016) (same); *Business Buyer Directory, LLC. v. Northwest Capital Appreciation, Inc*., No. CV–08–1606–PHX–DGC, 2008 WL 5082264, at *2 (D. Ariz. 2008) (same). Jurisdictional discovery should be denied only "when it is clear that [the] discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Id*. (citing *Wells Fargo & Co.*, 556 F.2d at 430 n. 24). "The Ninth Circuit has held that denying jurisdictional discovery where further discovery might demonstrate a basis for jurisdiction is an abuse of discretion." *Id*. (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd*., 328 F.3d 1122, 1135 (9th Cir.2003).

Defendant's misrepresentations and omissions in the Motion and in Mr. Semenenko's declaration show that at a minimum, there exists a genuine factual dispute regarding the existence and extent of Defendant's jurisdictional contacts with this District. *See generally* Sullivan Decl.; Everest Decl. Such dispute must be resolved in Plaintiff's favor. *See Boschetto*, 539 F.3d at 1015; *Schwarzenegger*, 374 F.3d at 800. Jurisdictional discovery is therefore warranted to determine what other jurisdictional facts Defendant may have omitted or withheld regarding key information such as sales of accused product to Arizona residents, web traffic to the Website specifically from Arizona residents and/or Arizona based IP addresses, and other relevant evidence showing that the Court's exercise of specific personal jurisdiction over Defendant is proper. *See, e.g., Haines v. Get Air LLC*, No. CV-15-00002-TUC-RM (EJM), 2016 WL 3345519, at *4 (D. Ariz. 2016) (finding that even though plaintiff did not meet "his burden of making a prima facie showing supporting

specific personal jurisdiction," he raised "legitimate questions" about the validity and consistency of the defendant's affidavits, which warranted jurisdictional discovery "to further develop the factual basis of this Court's jurisdiction").

### E. Venue in This District is Proper.

Venue for copyright claims is governed by 28 U.S.C. § 1400(a), which instructs that a civil action "may be instituted in the district in which the defendant or his agent resides or may be found." The Ninth Circuit has interpreted this to allow venue "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds, Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998). *See also Dirty World LLC v. College Envy LLC*, No. CV-15-01152-PHX-JJT, 2015 WL 11118112, at *9 (D. Ariz. Nov. 9, 2015) (citing *Columbia Pictures*, and concluding that "[b]ecause the Court has determined that [Tennessee based defendant] College Envy is subject to personal jurisdiction, venue is proper in Arizona"); *ACT Group Inc. v. Hamlin*, No. CV–12–00567–PHX–GMS, 2012 WL 2976724, at *4 (D. Ariz. 2012) ("Because this Court has personal jurisdiction over the Defendants, venue is also appropriately placed here").

Because the Court has specific personal jurisdiction over Defendant, venue in this District is also proper.

### F. Transfer Under 28 U.S.C. § 1404(a)

Even if venue is proper, "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" if done "[f]or the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal citation and quotations omitted). In its analysis:

the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id*. at 498–99. However, "[i]n determining whether to transfer a case, there is a strong presumption in favor of plaintiff's choice of forums that the Court will not lightly disturb." *Pomegrante Holdings LLC v. Nasr*, No. CV-21-02137-PHX-SMB, 2022 WL 425565, at *1 (D. Ariz. 2022) (citing *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003) *vacated on other grounds*, 542 U.S. 952 (2004)). *See also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[G]reat weight is generally accorded Plaintiff's choice of forum.").

If the Court concludes that it has specific personal jurisdiction over Defendant, and that venue in this District is therefore also proper, then Plaintiff's strong preference is for this case *not* to be transferred, as this would merely shift the inconvenience to Plaintiff. *See Pomegrante Holdings LLC*, 2022 WL 425565, at *1 (transfer "is not appropriate where the moving party merely seeks to 'shift the inconvenience to the party resisting the transfer.'") (internal citation omitted).

In this case, all factors except factor one are relevant (given that there are no agreements at issue between the parties). Under factor two, this Court is no doubt just as familiar with the laws governing copyright infringement as any other federal court. Under factor three, Plaintiff chose this Court to adjudicate this matter, a choice that the Court should not disturb lightly. *Id*. Under factors four and five, Plaintiff is at home in this District with all its case relevant contacts being situated here. Defendant also has relevant contacts with this District, such as those with GoDaddy.com LLC and Domains by Proxy, LLC, which make litigating a case in this Court both reasonable and foreseeable.

Under factor six, there should be little financial difference for Defendant litigating this case in Arizona instead of New York. Most of this case will be litigated through written

discovery (done electronically, with documents and information exchanged through the Internet). Plaintiff will seek to take Defendant witness depositions virtually through Zoom. Defendant's main counsel, Mr. Lattimore, will presumably remain as counsel whether this case is litigated in Arizona or New York. Though Defendant may choose to continue engaging with Ms. Giles and Ms. Martinez as its Arizona local counsel, this Court's local rules do not require that Defendant retain Arizona local counsel to defend the case here. Finally, Plaintiff has provided ample reasons for why Defendant's claims of "less than $5,000 in revenue over the past year" are disputed.  Motion at 13; Sullivan Decl. ¶¶ 11-23.

Next, factor seven is neutral based on Plaintiff's current knowledge of the potential non-party witnesses in this case, who to Plaintiff's understanding would not be concentrated in any particular jurisdiction.

Finally, under factor eight, Plaintiff's offices, operations, personnel, and witnesses are all based in Phoenix. Based on the relative sizes of Plaintiff's and Defendant's respective companies, Plaintiff has a larger number of employees and officers versus Defendant, and a larger base of operation. Those people and offices are all in Phoenix. Moreover, Defendant's assertions regarding documents and information being located in New York, and their supposed presentation being "less complicated and far less burdensome," are questionable at best. Motion at 14. With electronic discovery in the Internet age, where documents and information are routinely exchanged electronically, the physical location of documents and information does not matter much. Moreover, their "presentation" in court is burdensome regardless of the forum's location. Simply put, it is more inconvenient for Plaintiff to litigate this case in New York, and more inconvenient for Defendant to litigate this case in Arizona.

### G.     **Plaintiff Alternatively Requests Transfer Over Dismissal.**

Should the Court determine that it does not have personal jurisdiction over Defendant once the results of jurisdictional discovery are of record (or if jurisdictional discovery is denied and the Motion is granted), Plaintiff, like Defendant (*see* Motion at 2-

3, 12) alternatively requests transfer of this action to the Eastern District of New York instead of dismissal.

IV. **CONCLUSION.**

For at least the reasons set forth herein, Plaintiff respectfully requests that the Court grant Plaintiff's request for jurisdictional discovery and defer ruling on the Motion until that jurisdictional discovery is completed, and Plaintiff's findings can be submitted to the Court. However, should the Court deny Plaintiff's request for jurisdictional discovery and grant the Motion, Plaintiff alternatively requests transfer of this action to the Eastern District of New York, rather than dismissal.

RESPECTFULLY SUBMITTED this 13th day of September, 2024.

**RM Warner, PLC**

/s/*Michael B. Dvoren*
Michael B. Dvoren, Esq.
Raees Mohamed, Esq.
8283 N. Hayden Road Suite 229
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

17

# CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, I electronically transmitted the foregoing document, along with all exhibits and attachments, to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**The Law Office of Jason B. Lattimore, Esq., LLC**
Jason B. Lattimore, Esq.
Jason@LattimoreLaw.com
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel: (973) 998-7477

**Giles Law, PLLC**
Nancy R. Giles
ngiles@gileslegal.com
Laura C. Martinez
lmartinez@gileslegal.com
4808 N. 22nd St., Ste. 200
Phoenix, AZ 85016
Tel: (602) 222-5501

*Attorneys for Defendant*

/s/ Rebekah Triphahn