Nancy R. Giles (SBN 020163)
Laura C. Martinez (SBN 031486)
**GILES LAW, PLLC**
4808 N. 22nd Street, Suite 200
Phoenix, AZ 85016
Tel: 602-222-5501
Email: ngiles@gileslegal.com
Email: lmartinez@gileslegal.com

Jason B. Lattimore (JL2434) (*pro hac vice*)
THE LAW OFFICE OF JASON B. LATTIMORE, ESQ. LLC
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel: (973) 998-7477
Email: jason@lattimorelaw.com

*Attorneys for Defendant SinSaint, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Bad Dragon Enterprises, Inc., a Nevada Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>SinSaint, Inc., a New York Corporation<br><br>    Defendant. | No. 2:24-cv-00609-SRB<br><br>**DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR TO TRANSFER** |

Defendant, SinSaint, Inc., hereby replies to Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or to Transfer.[1]

## INTRODUCTION

Plaintiff's argument that it is entitled to jurisdictional discovery because there are supposed inconsistencies in the evidence Defendant submitted with its Motion lacks a genuine basis in fact. The "inconsistencies" Plaintiff purports to identify simply do not exist – they are demonstrably a figment of Plaintiff's imagination.

---

[1] Terms defined in Defendant's Motion have the same meaning in this Reply.

First, Defendant made clear that the sales information provided in the Declaration of Oleg Semenenko was for the time period up to April 2024, which is consistent with controlling case-law limiting the analysis of personal jurisdiction to either the timeframe during which the events giving rise to the claims occurred (for specific jurisdiction) or up to the date of the lawsuit (for general jurisdiction). Plaintiff's purchase of non-infringing products on July 25, 2024, well after it filed this lawsuit and after the Accused Products were removed from the market, has no bearing on this motion. *See* below at pp. 3-5.

Second, Defendant has never sold Accused Products on its Etsy account, which it opened on February 16, 2024, and its first sale of any product through that account occurred in late May 2024, which is outside of the relevant timeframe. *See* below at pp. 5, 8.

Third, Defendant's two in-person sales of accused products at an event that took place in another state are not relevant to the issue of personal jurisdiction, nor is their existence inconsistent with Defendant's representations to the Court. *See* below at p. 7.

Fourth, the nomination of a non-infringing product for an award does not equate with sales of Accused Products or any other products in Arizona or anywhere else. All it indicates is that the product was provided to someone in a position to nominate it and that person was impressed with the product. *See* below at pp. 7.

Last, Defendant did not register the SinSaint.com domain name. *See* Supplemental Declaration of Oleg Semenenko ("Semenenko Supp. Decl.") ¶¶ 7-10, Exh. D. SinSaint.com was registered by a different New York entity in January of 2022, roughly a year and a half before Defendant was formed. *Id.* Therefore, Plaintiff's arguments regarding the GoDaddy registration are invalid. *See* below at p. 9.

Defendant has, in effect, already provided the jurisdictional discovery necessary to illuminate the pertinent facts bearing on personal jurisdiction. And it did so under oath. The evidence Defendant produced shows that Plaintiff cannot meet its burden of establishing jurisdiction. It would be a waste of time and resources, of which Defendant has far less than Plaintiff, to permit Plaintiff to engage in a hopeless fishing expedition that would not alter the outcome of the pending motion.

1    The foregoing points, along with other matters raised by Plaintiff's Opposition, are

2    discussed in further detail below.

3                                        **ARGUMENT**

4    **I.    The Court Should Deny Plaintiff's Request for Jurisdictional**
5    **Discovery.**

6        "A mere 'hunch that [discovery] might yield jurisdictionally relevant facts,'

7    *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008), or 'bare allegations in the face

8    of specific denials,' *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)

9    (citation omitted), are insufficient reasons for a court to grant jurisdictional discovery."

10    *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022). Jurisdictional

11    discovery may be denied if, in reality, it is "a fishing expedition in search of a jurisdictional

12    hook." *Spy Optic v. AreaTrend*, 843 F. App'x 66, 69 (9th Cir. 2021) (citing *Pebble Beach*

13    *Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)). "Where a plaintiff's claim of personal

14    jurisdiction appears to be both attenuated and based on bare allegations in the face of

15    specific denials made by the defendants, the Court need not permit even limited discovery."

16    *Pebble Beach*, 453 F.3d at 1160 (citations and internal quotation marks omitted).

17        Under penalty of perjury, Defendant has already provided the information relevant

18    to jurisdiction to both the Court and Plaintiff. Plaintiff's allegations of inconsistencies that

19    are not supported by the facts do not provide a valid basis for jurisdictional discovery.

20    Plaintiff has failed to demonstrate grounds for this Court to conclude that jurisdictional

21    discovery would uncover any pertinent information beyond what Defendant has already

22    submitted. *See Pebble Beach*, 453 F. 3d at 1160 (there was no need for the district court to

23    grant additional time for discovery where the record was already sufficiently developed).

24    Accordingly, this Court should deny Plaintiff's request.

25    **A. Defendant's Representation Regarding the Absence of Purchasers In**
26    **Arizona Was Accurate.**

27        As Defendant explained in its Motion, "[t]he specific jurisdiction analysis focuses

28    solely on the timeframe during which the events giving rise to the lawsuit occurred" (*Steel*

3

*v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987)); and the general jurisdiction analysis "is analyzed based on a defendant's contacts with the forum up to the date the suit was filed" (*Gonzalez Corp. v. Consejo Nacional De Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980)). Motion at 5:25-6:1. Under both the general and specific jurisdiction analysis, events occurring after the filing of the Complaint are not considered. *See Menalco, FZE v. Buchan*, 602 F. Supp. 2d 1186, 1195 (D. Nev. 2009) ("[F]or specific jurisdiction, the Court does not consider events occurring after the Complaint is filed . . . .") (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) and *Steel*); *Candrian v. RS Indus.*, No. CIV 13-088-TUC-CKJ, 2013 U.S. Dist. LEXIS 166394, *13, 2013 WL 6147223 (D. Az. Nov. 22, 2013) ("[C]onduct occurring after the filing of the initial complaint does not provide a basis for this Court to exercise personal jurisdiction.").

Defendant was entitled, if not required, to argue the factual record in the context of the legal standard, which renders events after March 20, 2024 (the date the Complaint was filed) irrelevant to the issue of personal jurisdiction. Defendant never represented that the information it provided to the Court applied to any timeframe other than the period during which it offered Accused Products for sale. And Plaintiff acknowledges that the Accused Products were removed from Defendant's website in March of 2024, as Plaintiff was unable to purchase the products from the website at that time or thereafter. *See* Opposition at 3:9-11; *see also* Semenenko Decl. ¶ 20 (stating that all Accused Products were taken off the market by early April 2024).

Oleg Semenenko made clear in his declaration that the representations he made regarding sales of both Accused Products and SinSaint's products that are not at issue in this case were limited to the period during which SinSaint offered Accused Products for sale. Semenenko Decl. ¶ 29 ("[F]or the time SinSaint offered Accused Products for sale . . . SinSaint did not sell, ship, or distribute any products in or to Arizona."); *see also id.* at ¶ 27 (none of the purchasers of SinSaint products "during the time it offered the Accused Products for sale" were located in Arizona), ¶ 28 and Exh. A (reflecting the order history

for the "relevant timeframe"). Plaintiff's purchase of admittedly non-infringing products in July 2024, months after this case was filed and just a few weeks before Defendant filed this Motion, has no bearing on the personal jurisdiction analysis, nor does it cast any doubt on the accuracy of the information Defendant submitted to the court.

Plaintiff also suggests Defendant's sales numbers were inaccurate because Defendant had "revenue" from an Etsy.com account. However, Defendant never sold Accused Products on Etsy.com – they were only sold on SinSaint.com. Semenenko Decl. ¶ 21; Semenenko Supp. Decl. ¶ 2. Further, Defendant provided sales reports from the Etsy.com platform to Plaintiff in June of 2024 which showed that Defendant had just a single sale on Etsy.com between February 16, 2024 (when the account was opened) and June 16, 2024, when Defendant provided the information. Declaration of Jason B. Lattimore ("Lattimore Decl.") ¶¶ 3-4; Semenenko Supp. Decl. ¶¶ 3-4, Exh. C. Defendant had no sales on Etsy during the period relevant to personal jurisdiction – its first sale on Etsy was made on May 30, 2024. Semenenko Supp. Decl. ¶¶ 5-6.

### B. Michael Sullivan's Opinion Is Wildly Speculative and Runs Contrary to the Facts.

Plaintiff offers the opinion of its CFO, Michael Sullivan, in support of its arguments concerning Defendant's sales data. Plaintiff appears to be offering Sullivan's opinion pursuant to Rule 702. However, his opinion is unreliable because, in addition to being biased, he does not have the requisite experience or factual basis to support his opinion.

#### 1.    Sullivan Has No Pertinent Experience or Training.

Sullivan tacitly admits that he has no experience with start-up companies in the adult products industry, and no experience with any company in the industry that launched in recent years. Sullivan has never worked for any company other than Plaintiff in the adult products industry. *See* Declaration of Michael Sullivan ("Sullivan Decl.") ¶¶ 9-10. According to Sullivan, Plaintiff commenced operations in 2008, seven years before he was hired and fifteen years before Defendant launched its business. *See id.* ¶¶ 3, 9; Semenenko Decl. ¶¶ 5, 19. Thus, Sullivan's only experience in the industry comes from a company

that launched fifteen years before Defendant and long before Sullivan arrived. He therefore has no basis in experience to opine upon Defendant's expected performance as a start-up in the present market.

There is also no indication from Sullivan's declaration that he has any education or training that would qualify him to offer a reliable opinion regarding expected sales for a start-up company in the adult products industry, much less reliably account for the myriad economic and market variables that would bear on such an opinion. Sullivan's lack of pertinent education and training is reflected in the rudimentary, unscientific approach he employs to form his opinion, including his failure to even attempt to consider economic and market variables, reliance on unsupported assumptions, and failure to consider alternative conclusions that could be drawn from the facts (*see*, e.g., Semenenko Supp. Decl. ¶¶ 11-19).

> **2.    The Facts Do Not Provide a Basis for Sullivan's Opinion.**

Sullivan cites his reliance on "[Defendant's] website, its social media presence and posts, its use of online influencers to promote its products, [and] online reviews of its products," as the basis for his opinion. Sullivan Decl. ¶ 13. However, he provides no analysis of those items. Presumably, if they actually supported his opinion, he would have attached copies of what he was referring to and attempted to explain how they support his position. He did not.

Where Sullivan does discuss the details of specific events or information, he grossly overreaches.

*The AVN Event*

Sullivan provides nothing beyond his say-so to support the notion that Defendant's attendance at the January 2024 AVN event would have been expected to translate into internet sales of its products, much less such sales within the roughly two months before all Accused Products were removed from the market. His assertion is speculative and entirely unsupported.

1

*The AltStar Award Nomination*

2      Sullivan's reliance on the nomination of Defendant's "Octopus" product (which is
3   not at issue in this case) for a "Best Product" AltStar Award is disingenuous. Plaintiff is
4   the corporate sponsor of the AltStar Awards, and Defendant's counsel suggested months
5   ago that Plaintiff ask event organizers how the nomination process worked in order to
6   confirm that it was not linked to sales. *See* Lattimore Decl. ¶¶ 6-7. Yet Sullivan offers no
7   explanation of how nominations for the award were determined or any indication he
8   attempted to find out.

9      As Defendant previously suggested to Plaintiff, the nomination may have come
10   from one or more of the social influencers or adult performers who received free samples
11   of Defendant's products and was based on the qualities of the product rather than any
12   commercial success. *See* Lattimore Decl. ¶ 6. That is the far more plausible explanation
13   given that award administrators would not have had access to Defendant's sales
14   information and, in fact, sales were negligible.

15

*The Purchases at the AVN Event*

16      Sullivan claims to have "justifiable distrust" of Defendant's sales numbers related
17   to the question of jurisdiction because, according to Sullivan, Defendant did not include
18   two purchases of Accused Products that were made at the AVN event in Las Vegas in
19   December 2023. Sullivan Decl. ¶¶ 18-20. Sullivan appears to be quibbling that Defendant's
20   representations regarding "orders" of its products (*See* Semenenko Decl. ¶¶ 19, 24, 27)
21   were inaccurate because it did not include the two in-person purchases. That is a reach. A
22   face-to-face purchase of a product in-hand is not an "order," and face-to-face sales that
23   took place in another state are irrelevant to the issue personal jurisdiction in this case.[2]

24

25   _____

26   [2] Plaintiff only knows about the two sales at the AVN conference because Defendant
     voluntarily disclosed those sales to Plaintiff in the course of settlement discussions.
27   Lattimore Supp. Decl. ¶ 5. Plaintiff's use of that information, violating the spirit if not
     the letter of Rule 408, to suggest Defendant is concealing sales shows that Plaintiff is
28   grasping at straws in its attempt to support its allegations of inconsistencies.

*Defendant's Etsy Account*

Finally, Sullivan's claim that Defendant's Etsy account constitutes a "material omission" (Sullivan Decl. ¶ 21) is yet another misleading assertion on his part. As discussed above, the account was opened on February 16, 2024, Defendant did not sell any Accused Products on Etsy, and the first sale through the account occurred on May 30, 2024, which is outside of the period relevant to jurisdiction. Semenenko Supp. Decl. ¶¶ 2-6, Exh. C. Therefore, there was no "material omission."

## II.    Plaintiff Failed to Meet Its Burden of Establishing Personal Jurisdiction.

It was Plaintiff's burden in responding to Defendant's motion to come forward with evidence, by affidavit (or declaration), establishing personal jurisdiction over Defendant. *See* Motion at 4:26-5:9. Plaintiff has not come forward with evidence establishing any conduct on the part of Defendant that satisfies the "express-aiming" and "arising-out-of" requirements of the test for specific jurisdiction. *See* Motion at 8:19-11:18. Plaintiff admits in its Opposition that it lacks any evidence of sales by Defendant of any Accused Products to purchasers in Arizona (Opposition at 12:3-5), and Plaintiff does not provide evidence of sales of any products into Arizona during the timeframe relevant to personal jurisdiction. Its speculative and unfounded allegations of inconsistencies do not come close to meeting Plaintiff's burden of presenting facts establishing jurisdiction.

Plaintiff's assertions regarding its post-suit test purchase of admittedly non-infringing products and registration of the SinSaint.com domain provide no basis for jurisdiction over Defendant.

### A. Plaintiff's Post-Suit Purchase of Non-infringing Products Is Irrelevant.

With respect to Plaintiff's arguments concerning its July 2024 purchase, as discussed above, it is not proper to consider post-suit sales in connection with the jurisdiction analysis. Therefore, Plaintiff's argument that its purchase of non-infringing products in July 2024 bears on the "express-aiming" prong of the jurisdiction test is invalid.

Further, because the products that were the subject of the July purchase are not

accused of infringing any of Plaintiff's copyrights, they did not cause harm in the forum and Plaintiff's claims do not arise out of the sales. Plaintiff's purchase of the products therefore could not support a finding of jurisdiction even if it was proper to consider it. *See* Motion at 11:4-18. And merely maintaining a website where products could potentially be purchased by individuals in Arizona does not satisfy the "express aiming" or "arising-out-of" prongs of the test for jurisdiction. *Id.* 9:13-21, 11:4-18.

### B. Defendant Did Not Register SinSaint.com and Therefore Plaintiff's Arguments Related to Domain Registration Are Inapplicable.

While admitting that it does not know the identity of the registrant of the Sinsaint.com domain name (Sullivan Decl. ¶ 27; Opposition 4:16-19), Plaintiff simultaneously argues that Defendant registered the domain name with Arizona-based GoDaddy and agreed to certain forum selection clauses pertaining to domain disputes. However, Defendant did not register SinSaint.com and is not a party to any of the agreements Plaintiff cites in support of its arguments. *See* Semenenko Supp. Decl. ¶ 7-10, Exh. D. SinSaint.com was registered in January of 2022 by Globmarble Int'l Inc. (d.b.a. Globmarble Inc.), roughly a year and a half before Defendant was incorporated and commenced business. *Id.*; Semenenko Decl. ¶¶ 5, 19; *see also* Sullivan Decl. Exh. A ("Creation Date: 2022-01-23"). Globmarble remains the owner of the SinSaint.com registration. *Id.* ¶ 10. Therefore, Plaintiff's arguments regarding the GoDaddy registration have no application to Defendant.

### C. Even Putting Aside that Defendant Is Not the Domain Registrant, Merely Registering a Domain Name With an Arizona Registrar Does Not Provide a Valid Basis for Jurisdiction In This Case.

Even if Defendant had registered the SinSaint.com domain, which it did not, it would not provide a basis for jurisdiction in this case because Plaintiff alleges injuries arising out of copyright infringement, not domain name registration. *See EZScreenPrint LLC v. SmallDog Prints LLC*, No. CV-17-03605-PHX-GMS, 2018 U.S. Dist. LEXIS 131611, *10-11, 2018 WL 3729745 (D. Az. Aug. 6, 2018) (domain name registration did not give rise to the specific injuries alleged by the plaintiff in trademark infringement action

1    and therefore could not support a finding of general or specific jurisdiction).

2        Plaintiff's reliance on the forum selection clauses in the GoDaddy agreements does

3    not add any support to its position. As Plaintiff acknowledges, these forum selection

4    clauses pertain to "dispute[s] involving the sinsaint.com domain name." Opposition at 12.

5    They do not concern claims arising out of allegations of copyright infringement.

6        **D. Plaintiff's Cease-and-Desist Letter Does Not Establish a Basis for**
7        **Finding Intentional Harm Targeting the Forum.**

8        Plaintiff's argument that jurisdiction arises out of merely offering Accused Products

9    for sale after receipt of a cease-and-desist letter identifying Plaintiff's location runs directly

10   contrary to the Supreme Court's ruling in *Walden v. Fiore*, 571 U.S. 277, 286, 134 S. Ct.

11   1115, 188 L. Ed. 2d 12 (2014). As discussed on page 10 of the Motion, a plaintiff cannot

12   establish express aiming at the forum state by alleging that the defendant knew of the

13   plaintiff's forum connections and could have reasonably foreseen the harm in that forum.

14   *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 n.5 (9th Cir. 2020) ("In *Walden*,

15   the Supreme Court rejected our prior decisions holding that the express aiming element

16   could be satisfied by a defendant's knowledge that harm may be inflicted on a plaintiff in

17   a particular forum."); *accord Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,

18   1069-70 (9th Cir. 2017).

19       **III.    Transfer Pursuant to 28 U.S.C. § 1404.**

20       Plaintiff places much emphasis on the notion that deference should be given to its

21   choice of forum.  However, such deference is greatly diminished where, as in this case, the

22   facts out of which the lawsuit arises occurred outside of the forum. *See, e.g., Pacific Car*

23   *and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (holding where the operative

24   facts from which a plaintiff's claim arise do not occur in the chosen forum, plaintiff's

25   choice is not accorded the usual degree of deference)*; Metz v. U.S. Life Ins. Co.*, 674 F.

26   Supp. 2d 1141, 1146 (C.D. Cal. 2009) ("[d]eference to the plaintiff's choice of venue is

27   further diminished if ... the operative facts have not occurred within the forum"); *Cook v.*

28   *Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993) (noting that

courts accord little weight to a plaintiff's choice of forum "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum").

As reflected in the information Defendant submitted in support of its Motion, the facts giving rise to the claims in this case have no relation to Arizona. For that reason, and those Defendant has previously advanced, this action should, in the alternative, be transferred to the Eastern District of New York.

## CONCLUSION

For the foregoing reasons, and those stated in Defendant's Motion, Plaintiff has failed to meet its burden of proving jurisdiction over Defendant and has failed to present any legitimate argument supporting jurisdictional discovery. The Court should therefore grant Defendant's motion to dismiss or, in the alternative, transfer this action to the District Court for the Eastern District of New York.

DATED this 30th day of September, 2024.

GILES LAW, PLLC


By /s/  *Nancy R. Giles*
    Nancy R. Giles
    Laura C. Martinez
    4808 N. 22nd St., Ste. 200
    Phoenix, AZ  85016

    Jason B. Lattimore
    The Law Office of Jason B. Lattimore, Esq. LLC
    55 Madison Avenue, Suite 400
    Morristown, NJ 07960


    *Attorneys for Defendant SinSaint, Inc.*

11

1

## **CERTIFICATE OF SERVICE**

2

        I hereby certify that on September 30, 2024, I electronically transmitted the

3

attached document, along with the accompanying Supplemental Declaration of Oleg

4

Semenenko with exhibits, and Declaration of Jason B. Lattimore to the Clerk's Office

5

using the CM/ECF System, which also electronically submits the attached document to

6

all registered users thereon.

7

By:/s/ *Amanda Gorski*

8

    Amanda Gorski

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28