**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bad Dragon Enterprises Incorporated,<br>　　　　　Plaintiff,<br>v.<br>SinSaint Incorporated,<br>　　　　　Defendant. | No. CV-24-00609-PHX-SRB<br>**ORDER** |

Before the Court is Defendant SinSaint Inc.'s ("SinSaint") Motion to Dismiss ("Motion") Plaintiff Bad Dragon Enterprises Inc.'s ("Bad Dragon") Complaint. (Doc. 20, ("Mot.").) The Court will grant the Motion.

**I.　BACKGROUND**

This case arises out of SinSaint's alleged copyright infringement of Bad Dragon's products. (*See generally* Doc. 1, Compl.) Bad Dragon is a Nevada corporation with its principal place of business in Arizona that develops, manufactures, and sells sex toys. (*Id.* ¶¶ 1, 3.) SinSaint is a New York Corporation with its principal place of business in New York that also sells sex toys. (*Id.* ¶ 4; Doc. 20-1, Decl. of Oleg Semenenko ("Semenenko Decl.") ¶¶ 3, 5–7.)

According to the Complaint, SinSaint marketed and sold thirteen products (collectively, "Accused Products") through its website, SinSaint.com, which directly copied the "unique, original sculptural design elements" of thirteen products marketed and sold by Bad Dragon. (Compl. ¶ 10; *id.* ¶¶ 9, 12, 14–16.) Bad Dragon owns valid and

1 enforceable copyrights in each of the thirteen products SinSaint allegedly copied
2 (collectively, "Copyrighted Products"). (*Id.* ¶ 11.) On January 31, 2024, Bad Dragon sent
3 SinSaint a demand letter notifying it of Bad Dragon's ownership of the Copyrighted
4 Products and demanding that SinSaint cease manufacturing, marketing, and selling the
5 Accused Products by April 1, 2024. (*Id.* ¶¶ 19–20.) SinSaint responded with a letter dated
6 February 16, 2024, which stated that it had "started the process of removing *some* of the
7 allegedly infringing listings for product redesign." (*Id.* ¶ 21.)

8 Bad Dragon filed the Complaint in this Court on March 20, 2024, alleging thirteen
9 counts of direct copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*
10 (*Id.* ¶¶ 23–129.) On August 14, 2024, SinSaint filed the Motion, seeking to dismiss the
11 Complaint for lack of personal jurisdiction and improper venue, or to transfer the case to
12 the United States District Court for the Eastern District of New York. (Mot. at 1.) Bad
13 Dragon filed its Response on September 13, 2024, to which SinSaint replied on September
14 30, 2024. (Doc. 21, Resp. in Opp'n to Mot. ("Resp."); Doc. 22, Reply.)

15 **II.    LEGAL STANDARD & ANALYSIS**

16 The plaintiff has the burden of establishing personal jurisdiction. *Kokkonen v.*
17 *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Where a court resolves the
18 question of personal jurisdiction by relying on the pleadings and supporting exhibits
19 without conducting an evidentiary hearing, a plaintiff must make only a "prima facie
20 showing of jurisdictional facts" to avoid dismissal. *Boschetto v. Hansing*, 539 F.3d 1011,
21 1015 (9th Cir. 2008) (citation omitted). In determining whether a plaintiff has met that
22 burden, the "[u]ncontroverted allegations in the plaintiff's complaint must be taken as
23 true." *Id.* (citation omitted). "Conflicts between parties over statements contained in
24 affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor*
25 *Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, "disputed allegations in the complaint
26 that are not supported with evidence or affidavits cannot establish [personal] jurisdiction."
27 *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).

28 Personal jurisdiction over a nonresident defendant requires a plaintiff to show that

the forum state's long-arm statute confers jurisdiction and that the exercise of jurisdiction comports with constitutional principles of due process. *See Boschetto*, 539 F.3d at 1015. Arizona's long-arm statute permits the exercise of personal jurisdiction to the same extent as the U.S. Constitution. *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 246 P.3d 343, 346 (Ariz. 2011) (citing Ariz. R. Civ. P. 4.2(a)). Due process requires that a non-resident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The scope of a defendant's contacts with a forum are measured "at the time of the events underlying the dispute." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022) (citation omitted); *see Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered.").

Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, under which a defendant's contacts with the state allow the state to exercise jurisdiction over the defendant in all matters; and (2) specific jurisdiction, which arises out the defendant's contacts with the forum state giving rise to the litigation. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011). Because Bad Dragon does not assert that the Court has general jurisdiction, the Court will analyze only whether it has specific jurisdiction over SinSaint. (*See* Resp. at 7–12.)

### A. Specific Jurisdiction

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (citation omitted). The Ninth Circuit employs a three-part test to evaluate whether a non-resident defendant has sufficient minimum contacts with the forum state for specific jurisdiction:

>(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802). All three requirements must be met for jurisdiction to comport with federal due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). If a plaintiff meets the first two requirements, the burden shifts to the defendant to set forth a compelling case that exercising jurisdiction would be unreasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). "But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Boschetto*, 539 F.3d at 1016.

The first requirement is analyzed under either the "purposeful direction" test or the "purposeful availment" test, which are two distinct standards. *Schwarzenegger*, 374 F.3d at 802. Courts apply the purposeful direction test to copyright infringement claims. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). The purposeful direction test, also known as the "*Calder* effects" test, "asks whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Herbal Brands*, 72 F.4th at 1091 (cleaned up); *see Calder v. Jones*, 465 U.S. 783 (1984).

Bad Dragon analogizes this case to *Herbal Brands* and argues that each purposeful direction element is satisfied because SinSaint 1) continued to market the Accused Products after receiving a demand letter from Bad Dragon; 2) operates an interactive website through which Arizona residents can purchase its products for shipment to Arizona; and 3) contracted with Arizona-based companies for domain registration and privacy services and agreed to resolve certain disputes regarding its domain name in Arizona. (Resp. at 3–4, 10–11.) These actions are insufficient to show purposeful direction under *Herbal Brands*.

In that case, an Arizona manufacturer of health and wellness products alleged that online sellers based in New York had made unauthorized sales of its products on Amazon, in violation of the Lanham Act and state law. *Herbal Brands*, 72 F.4th at 1088. The online sellers moved to dismiss for lack of personal jurisdiction, and plaintiff argued that jurisdiction existed because the sellers "actually sold infringing products via an interactive website and caused them to be delivered to forum residents." *Id.* at 1092. The Ninth Circuit agreed, holding that "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." *Id.* at 1093.

Unlike *Herbal Brands*, however, Bad Dragon does not allege or provide evidence that SinSaint sold *any* allegedly infringing products to Arizona residents via an interactive website.[1] (*See* Resp. at 3–6, 9–12; *see generally* Doc. 21-1, Ex. 1, Decl. of Michael Sullivan ("Sullivan Decl."); Doc. 21-2, Ex. 2, Decl. of Michael Everest ("Everest Decl.").) Instead, Bad Dragon explains that after SinSaint removed the Accused Products from SinSaint.com, a non-party purchased two non-infringing products from the website on July 25, 2024, which were shipped to the non-party's home in Arizona. (Resp. at 3; Everest Decl. ¶¶ 4–7, 16.) Though this test purchase demonstrates that SinSaint generally transacts with Arizona customers via its own website—which satisfies the first and second elements of the purposeful direction test—it fails to show that SinSaint's Arizona-related conduct "caus[ed] harm that the defendant [knew was] likely to be suffered in the forum state." *Herbal Brands*, 72 F.4th at 1091.[2] Moreover, Bad Dragon's allegation that SinSaint continued to market some of the Accused Products on its website after receiving the demand letter does not, without more, constitute express aiming. (Compl. ¶ 21; *see* Resp. at 10); *Herbal Brands*, 72 F.4th at 1091 ("[O]peration of an interactive website does not, by itself, establish express aiming.").

---

[1] SinSaint claims it never sold or shipped any of the Accused Products to Arizona residents. (Mot. at 4 (citing Semenenko Decl. ¶¶ 21–26).)

[2] The test purchase, which was made four months after Bad Dragon filed the Complaint, also falls outside the relevant jurisdictional period, which is "at the time of the events underlying the dispute." *Ratha*, 35 F.4th at 1171; (*see* Compl.)

- 5 -

Bad Dragon's arguments related to SinSaint's domain services are similarly unpersuasive. (*See* Resp. at 4.) First, SinSaint has produced evidence appearing to support its claim that it did not register the SinSaint.com domain name. (Reply at 9; Doc. 22-1, Suppl. Decl. of Oleg Semenenko ("Semenenko Suppl. Decl.") ¶¶ 7–8; Doc. 22-1, Ex. D, ("Domain Registration Receipt").) Second, while registering a domain name and purchasing domain privacy services are intentional acts, those acts bear no relationship to the alleged conduct that gave rise to this lawsuit. *See Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (explaining that "purchasing a domain name and purchasing domain privacy services" are "intentional acts"); *see, e.g.*, *Inter123 Corp. v. Ghaith*, No. CV-14-00463-PHX-DGC, 2014 WL 1343508, at *2–3 (D. Ariz. Apr. 4, 2014) (finding that defendant's decision to register its domain name with an Arizona company was insufficient to confer specific jurisdiction because the domain name registration was "not a 'but for' cause of th[e] lawsuit").

Because Bad Dragon has failed to demonstrate purposeful direction, "the jurisdictional inquiry ends" and the Court need not consider the remaining prongs for minimum contacts. *See Boschetto*, 539 F.3d at 1016.

**B.     Jurisdictional Discovery**

Bad Dragon argues that SinSaint made misrepresentations and omissions regarding its sales revenue and requests jurisdictional discovery to uncover "what other jurisdictional facts Defendant may have omitted or withheld," including sales of Accused Products to Arizona residents. (Resp. at 13–14.)

"Jurisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (citation omitted). "But a mere 'hunch that [discovery] might yield jurisdictionally relevant facts,' or 'bare allegations in the face of specific denials,' are insufficient reasons for a court to grant jurisdictional discovery." *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864–65 (9th Cir. 2022) (alteration in original) (citations omitted); *see Boehm v.*

*Airbus Helicopters Inc.*, 527 F. Supp. 3d 1112, 1122 (D. Ariz. 2020) (denying jurisdictional discovery where "[p]laintiff's request appear[ed] to be a fishing expedition for jurisdictional facts").

In the Motion, SinSaint states that it had "less than $5,000 in revenue over the last year" and attaches documents that purportedly reflect the company's "complete order history for the relevant timeframe." (Mot. at 13 (citing Semenenko Decl. ¶¶ 3–4); Semenenko Decl. ¶ 28; *see* Doc. 20-1, Ex. A.) Bad Dragon disputes the accuracy of the revenue figure and sales record based on a declaration from its chief financial officer, Michael Sullivan. (Resp. at 5–6.) In the declaration, Sullivan describes his experience in the adult products industry and explains that, considering several factors—including SinSaint's online product reviews, social media presence, influencer engagement, and its attendance at the "2024 AVN awards"[3] in Las Vegas—it is "very likely" SinSaint made additional sales that its president, Oleg Semenenko, did not disclose. (Sullivan Decl. ¶¶ 13, 23; *see id.* ¶¶ 10–12, 14–22.)

According to Bad Dragon, SinSaint's counsel also stated in an April 2024 letter that "[t]here are records of only seven completed orders in the company's entire history, excluding test orders by the owner. Of those seven orders, just one involved an accused product (Lao), and that order was canceled and refunded." (Resp. at 5–6 (quoting Sullivan Decl. ¶ 18); *see also* Semenenko Decl. ¶ 27.) Two months later, SinSaint's counsel sent an e-mail stating that the company had identified "cash sales to individuals at the AVN show," including two sales of Accused Products. (Resp. at 6 (quoting Sullivan Decl. ¶ 20); *see* Reply at 2, 7.) The e-mail included screenshots which allegedly showed that SinSaint made additional revenue through Etsy.com, which was not disclosed by Semenenko.[4] (*Id.* (citing Sullivan Decl. ¶ 21).) Bad Dragon argues that these "inconsistent and contradictory assertions" further justify jurisdictional discovery. (Resp. at 5–6.)

The Court disagrees. First, Sullivan's claims are entirely speculative and amount to

---

[3] According to Sullivan, the AVN awards is the "premier sales convention and award show" for the United States adult industry. (Sullivan Decl. ¶ 13.)
[4] Bad Dragon did not attach the screenshots to its Response. (*See generally* Resp.)

- 7 -

"a mere 'hunch that [discovery] might yield jurisdictionally relevant facts,'" which is insufficient. *LNS Enterprises*, 22 F.4th at 864–65. Second, the fact that SinSaint later discovered and voluntarily disclosed in-person sales made at the AVN awards does not discredit Semenenko's declaration, which reviews the company's sales history in the context of its online marketplace on SinSaint.com.[5] (*See, e.g.*, Semenenko Decl. ¶¶ 19–21 (explaining that SinSaint offered the Accused Products on SinSaint.com from May 2023 to early April 2024 and did not market the Accused Products on any other website); *id.* ¶ 27 (stating that during the period it offered the Accused Products, SinSaint "had less than ten orders of any products (excluding *test transactions* made by me)" (emphasis added)).) The same is true as to SinSaint's revenue from Etsy.com, which appears to stem from the single sale of a non-infringing product that occurred after Bad Dragon filed the Complaint. (*See* Semenenko Suppl. Decl. ¶¶ 4–6 (explaining that SinSaint made a single Etsy sale between February and June 2024, which occurred on May 30, 2024); Doc. 22-1, Ex. C.)

Because Bad Dragon's request is little more than "a fishing expedition for jurisdictional facts," the Court will not permit jurisdictional discovery. *Boehm*, 527 F. Supp. 3d at 1122.

### III.   CONCLUSION

The Court grants SinSaint's Motion to Dismiss because Bad Dragon has not established that this Court has personal jurisdiction over SinSaint. The Court denies Bad Dragon's request for jurisdictional discovery.

**IT IS ORDERED** granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20).

**IT IS FURTHER ORDERED** denying as moot Defendant's alternative requests for dismissal for improper venue or to transfer (Doc. 20).

. . .

. . .

. . .

---

[5] The in-person sales, which were made in Nevada, are also irrelevant to the jurisdictional analysis of SinSaint's contacts with Arizona. (*See* Sullivan Decl. ¶ 13.)

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment dismissing this case without prejudice.

Dated this 7th day of February, 2025.

_____
Susan R. Bolton
United States District Judge